IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL MEINHART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-0073 |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This case arises out of the explosion of the DEEPWATER HORIZON in the Gulf of Mexico on April 20, 2010.  Paul Meinhart sued BP[1] under the Jones Act, 45 U.S.C. § 51, *et seq.*  BP removed the case from Texas state court.  Meinhart moved to remand.  (Docket Entry No. 3).[2]  BP moved for a stay, contending that this court should allow the Judicial Panel on Multidistrict Litigation ("JPML") to determine whether to consolidate this case with other cases arising out of the DEEPWATER HORIZON's explosion in the Eastern District of Louisiana before ruling on any motions.  (Docket Entry No. 4).  The rapid progression of this case is set out more fully below.

Based on the motions, the parties' filings, and the relevant law, this court stays the case pending the JPML's decision whether to transfer the case to the Eastern District of Louisiana.  The reasons are explained below.

---

[1]  "BP" refers collectively to BP Exploration & Production Inc., BP Products North America Inc., BP Corporation North America Inc., and BP PLLC.  This Memorandum and Order does the same.  The petition also names Halliburton Energy Services, Inc. as a defendant.

[2]  Unless otherwise noted, citations are to the docket in this case.  Citations to the JPML docket are indicated by "MDL No. 2179."

**I.     Background**

Paul Meinhart, a motorman on the DEEPWATER HORIZON, sued BP and Halliburton in Texas state court. The petition asserts a claim against BP under the Jones Act. Although he was a Transocean employee, he claims that he can recover against BP as a borrowed seaman. A Jones Act claim ordinarily bars removal. BP removed to this court on January 7, 2011, asserting that the Jones Act claim was fraudulently pleaded and that the Outer Continental Shelf Lands Act (OCSLA), 23 U.S.C. § 1349, provides a basis for removal under 28 U.S.C. § 1441(b). (Docket Entry No. 1). Meinhart moved to remand on January 11. He contends that the Jones Act claim is not fraudulently pleaded and, even if it is, that the OCSLA does not provide a basis for removal under § 1441(b). (Docket Entry No. 3). BP opposed the motion to remand for the reasons set out in its notice of removal. (Docket Entry No. 9). Meinhart replied. (Docket Entry No. 16).

The day after Meinhart moved to remand, BP moved to stay the case to allow the JPML to consider whether to transfer the case to the Eastern District of Louisiana, where it has consolidated other cases arising out of the DEEPWATER HORIZON explosion. (Docket Entry No. 4).[3] Meinhart responded that staying before ruling on the motion to remand would delay his ability to proceed in state court and to obtain Jones Act compensation. He noted that the judge in the transferee court has stayed consideration of all motions. BP responded that the MDL court is the appropriate forum to decide the remand issue.

The parties argued the motions on February 16. (Docket Entry No. 18). Meinhart emphasized the high burden to show fraudulent pleading in a Jones Act case and his concerns that the MDL court would not rule on his motion to remand in a timely manner. BP argued that it

---

[3]   Halliburton joined the motion to stay. (Docket Entry No. 10).

appeared very unlikely that Meinhart would be able to prevail on a Jones Act claim. It contended that the case shared issues with the cases consolidated in the Eastern District of Louisiana. Alternatively, BP requested that this court authorize discovery to enable it to demonstrate that Meinhart's Jones Act claim has no reasonable likelihood of success.

As the case developed before this court, the JPML considered whether to consolidate the case with the actions pending in the Eastern District of Louisiana. The JPML conditionally transferred the case to the Eastern District of Louisiana on January 20. (MDL No. 2179, Docket Entry No. 468).[4] Meinhart objected to the transfer on January 27. (MDL No. 2179, Docket Entry No. 478). The JPML set the case for hearing without oral argument on March 30. (MDL No. 2179, Docket Entry No. 512). The parties have informed the court that they expect a decision in the coming weeks.

On March 28, this court notified the parties that they could supplement the record by March 30, the date for the JPML to consider transferring the case. Meinhart responded on March 29. (Docket Entry No. 24). Meinhart's filings included a supplemental affidavit and an affidavit from Stephen Bertone, another Transocean employee who worked on the DEEPWATER HORIZON. (*Id.*, Exs. C, D). Transocean sought leave to file an *amicus* brief including Bertone's medical records, which it contended called into question Bertone's ability to recall his time on the DEEPWATER HORIZON. (Docket Entry Nos. 27, 28). Meinhart opposed the motion. (Docket Entry No. 30). BP's supplemented its response, including an affidavit from a Transocean employee

---

[4] A "'Conditional Transfer Order' is an administrative device used to expeditiously transfer apparently related cases where there is no opposition to such a transfer. It should not be considered by counsel as a decision or judgment by the Panel which must be reversed before such an order can be vacated. It is simply an administrative act of the Clerk which can be and will be vacated upon the showing of good cause by any party." *In re Grain Shipments*, 319 F. Supp 533, 534 (J.P.M.L. 1970).

asserting that Transocean's practice was to maintain control of its employees on the DEEPWATER HORIZON. BP also requested an opportunity to depose Meinhart. (Docket Entry No. 29). Meinhart replied. (Docket Entry No. 32).

The arguments are analyzed below.

**II.     Analysis**

**A.     Motions to Stay Pending a Motion to Consolidate in the MDL Court**

BP has moved for a stay pending the JPML's decision whether to consolidate this case with the other cases arising out of the DEEPWATER HORIZON incident. Meinhart argues that this court should rule on his motion to remand first.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55. Many courts have followed the three-step procedure set out in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001). 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3866.1 (citing cases). If the remand motion appears not to be "legally or factually difficult" after "preliminary scrutiny," the court should remand the case to state court. *Meyers*, 143 F. Supp. 2d at 1049. Remand under step one is generally appropriate when "removal was clearly improper." *McClelland v. Merck & Co.*, Civ. A. No. 06-00543 JMS/BMK, 2007 WL 178293, at *2 (D. Haw. Jan. 19, 2007) (quoting *Leeson v. Merck & Co., Inc.*, No. S-05-2240 WBS PAN, 2006 WL 3230047, at *3 (E.D. Cal. Jan. 27, 2006)). If the motion appears difficult, the court should determine whether similar issues appear in cases

consolidated before the MDL court. *Meyers*, 143 F. Supp. 2d at 1049. If not, the court may decide the remand motion. If so, the court should determine whether a stay is appropriate.

Under the *Meyers* approach, if the motion to remand presents difficult issues that are common to cases that will be consolidated before the MDL court, a stay is generally appropriate. *See Bd. of Trustees of the Teachers' Retirement Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002). Three factors are generally relevant to a stay when the JPML will consider transfer: (1) potential prejudice to the nonmovant, (2) hardship and inequity to the movant if the action is not stayed, and (3) the judicial resources to be saved by avoiding duplicative litigation if the cases are consolidated. *Trahan v. BP*, Civ. A. No. H-10-3198, 2010 WL 4065602, at *1 (S.D. Tex. Oct. 15, 2010) (citing *Cajun Offshore Charters v. BP Prods. N. Am.*, Civ. A. No. 10-1341, 2010 WL 2160292, * 1 (E.D. La. May 25, 2010)).

        B.      **Removing a Jones Act Claim**

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed. *See* 28 U.S.C. § 1441. The removing party bears the burden of establishing that a state court suit is removable to federal court. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995) (citation omitted). Doubts about the propriety of removal are to be resolved in favor of remand. *Waldrop v. Penn Treaty Network Am. Ins. Co.*, No. G-08-0149, 2008 WL 3287148, at *2 (S.D. Tex. Aug.6, 2008) (citing *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam)).

Meinhart brought his Jones Act claim in state court. When a plaintiff sues under the Jones Act, the defendant generally cannot remove the case to federal court. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006). If a Jones Act claim is fraudulently pleaded, it is removable. *Id.*

"[A] district court . . . may use a 'summary judgment-like procedure' to dispose of the assertion that the Jones Act claim was fraudulently pleaded." *Id.* (quoting *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)). "The fact that Jones Act claims are ordinarily not removable does not prevent this inquiry. Lawsuits in which non-diverse defendants have been joined are ordinarily non-removable as well. Nonetheless defendants are permitted to demonstrate that parties — or claims — are baseless in law and fact and serve only to frustrate federal jurisdiction." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 206 (5th Cir. 1993). "The removing party must show that there is no possibility that [the] plaintiff would be able to establish a cause of action." *Id.* at 207. "The court may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits." *Holmes*, 437 F.3d at 445 (quoting *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345–46 (5th Cir. 1999)). The burden lies entirely with the removing party. A plaintiff is "not required to produce evidence" supporting his claim at the removal stage. *Lackey*, 990 F.2d at 208.

Only seamen may proceed under the Jones Act. *Hufnagel*, 182 F.3d at 346. BP does not dispute that Meinhart was a seaman. It contends that Meinhart was not its seaman, but Transocean's seaman. Meinhart has not named Transocean in this suit, so, BP contends, Meinhart has no reasonable possibility of prevailing on his Jones Act claim. Meinhart argues that he is BP's borrowed seaman.[5] Courts consider nine factors to determine whether a plaintiff is a company's borrowed seaman:

---

[5] Other cases have used the term "borrowed servant," *Hufnagel*, 182 F.3d at 347, or "borrowed employee," *New v. Associated Painting Servs., Inc.*, 863 F.2d 1205, 1208 (5th Cir. 1989).

6

>   (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
>   (2) Whose work is being performed?
>
>   (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
>   (4) Did the employee acquiesce in the new work situation?
>
>   (5) Did the original employer terminate his relationship with the employee?
>
>   (6) Who furnished tools and place for performance?
>
>   (7) Was the new employment over a considerable length of time?
>
>   (8) Who had the right to discharge the employee?
>
>   (9) Who had the obligation to pay the employee?

*Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988); *Ausama v. Tetra Applied Techs., LP*, Civ. A. No. 05-2513, 2006 WL 2548171, at *1 (E.D. La. Aug. 31, 2006).

The *Melancon* court observed that "[t]he first factor, the question of who has control over the employee and the work he is performing, has been considered the central issue of 'borrowed employee' status in some of our cases, although not necessarily determinative." 834 F.2d at 1244–45 (citation omitted). BP has relied heavily on the terms of its contract with Transocean, which states that the parties "expressly agree, acknowledge, and stipulate that neither the CONTRACT nor the performance of [Transocean's] obligations or duties hereunder shall ever result in [Transocean], or any employed by [Transocean], being . . . an employee, agent, servant, or representative of [BP]." It further provides that BP "shall have no direction or control of [Transocean] or its employees and agents except in the results to be obtained. The actual

performance and superintendence of all work hereunder shall be by [Transocean]." (Docket Entry No. 9, Ex. B, ¶ 5). But "parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely saying in a provision in a contract that it cannot arise," because the "reality at the worksite and the parties' actions in carrying out a contract . . . can impliedly modify, alter, or waive express contract provisions." *Melancon*, 834 F.2d at 1245.

BP's evidence goes beyond the contracts. Stuart William Sannan, the general manager for North America for Transocean, testified in his affidavit that Meinhart's job description called for him to be supervised by Transocean engineers or mechanics. (Docket Entry No. 29, Ex. 1, ¶ 7). "To my knowledge," he continued, "Mr. Meinhart received most of his employment direction from the crew members fulfilling these roles, and in all instances Mr. Meinhart would have received work supervision only from other Transocean managers or other Transocean staff." (*Id.*). He also testified that he was "aware of no facts indicating that Mr. Meinhart became a *de facto* employee or seaman of BP. I am not aware of any regular, routinized, or substantial relationship [that] had arisen in which BP personnel on the *Deepwater Horizon*, sometimes called 'company men,' gave direct orders to Mr. Meinhart." (*Id.*, ¶ 12). He testified that he was "not aware of any situation on the *Deepwater Horizon* in which Mr. Meinhart was directly supervised in his work functions or details of his work by a BP employee or by the employee of any other BP contractor who also performed work on the *Deepwater Horizon*." (*Id.*, ¶ 13).

BP's Cynthia Reyes Garcia, who was the company's human resources manager when the DEEPWATER HORIZON exploded, (Docket Entry No. 9, Ex. B, ¶ 2), testified similarly: "As a general practice and consistent with BP's internal guidelines, BP does not assume control over the employees of contractors, like Transocean, who are contracted to provide a service to BP." She

8

continued, "I am not aware of any facts that would indicate that BP's general practice was not followed with respect to Paul Meinhart or other Transocean employees." (*Id.*, Ex. 7).

Meinhart has submitted two affidavits. In his first affidavit, he conclusorily claimed that "BP employees had the power to direct me in the performance of my work." (Docket Entry No. 24, Ex. B). He clarified in his second affidavit, offering that he "regularly carried out orders that were issued by BP. This could include accomplishing tasks that were on BP's priority maintenance list, doing work on thrusters, or fixing problems noticed by BP's company men who rant the rig." (*Id.*, Ex. C, ¶ 2.). He continued, "The work I was performing on the DEEPWATER HORIZON was BP's work. We were drilling a well that was leased by BP so BP could generate revenue. My work was necessary to the accomplishment of BP's goals." (*Id.*, ¶ 2).

Another Transocean employee, Stephen Bertone, testified that "Meinhart spent approximately 30%–40% of his day performing . . . tasks that BP assigned." (*Id.*, Ex. D, ¶ 4). He described an occasion when he and Meinhart were "ordered by BP to dislodge a large drainage pipe," and asserted that BP employees checked over their work. (*Id.*, ¶ 7–8).

Meinhart contends that the Sannan and Garcia affidavits fall short of the evidence necessary to establish conclusively that he has no basis to recover on his Jones Act claim. In *Joyner v. ENSCO Offshore Oil Co.*, Civ. A. No. 99-3754, 2000 WL 341029 (E.D. La. Mar. 29, 2000), the defendant defeated the motion to remand by offering an uncontroverted affidavit from a worker on th drilling rig establishing that the plaintiff's work on a floating rig was directed not directed by the vessel owner subject to suit, but by another company. *Id.* at *7. *Joyner* is distinguishable. Neither Reyes nor Garcia claims to have been on the DEEPWATER HORIZON at any point.

BP contends that it should be allowed to depose Meinhart to clarify his claim and meet its burden. Relying on an investigation report from the DEEPWATER HORIZON incident and Sannan's affidavit, it contends that any BP requests were filtered through Transocean personnel, who oversaw Meinhart's performance. The arrangement, BP contends, made Transocean an independent contractor; Meinhart was not BP's borrowed servant.

A court has discretion to authorize discovery "on a tight judicial tether, sharply tailored to the question at hand . . . after a showing of necessity." *Guillory v. PPG Indus.*, Inc., 434 F.3d 303, 311 (5th Cir. 2005).[6] The Fifth Circuit has observed that refusing to allow discovery under such circumstances "would deny all substance to the pierce-the-pleading option that we have repeatedly sanctioned." *Id.* (citations omitted). Courts have allowed defendants to depose plaintiffs to help determine whether a Jones Act claim is fraudulently pleaded. *See, e.g.*, *Hufnagel*, 182 F.3d at 346 nn.2–3; *Burchett*, 48 F.3d at 179; *DeHart v. BP Am., Inc.*, No. 09 CV 0626, 2010 WL 231744, at *2 (W.D. La. Jan. 14, 2010); *Chauvin v. Ingram Barge Co.*, Civ. A. No. 08-1593, 2008 WL 4470074, at *2 (E.D. La. Oct. 1, 2008).

The Meinhart and Bertone affidavits vaguely suggest that BP exercised control, but they are very short on detail. BP has suggested that Meinhart and Bertone may be attributing their Transocean supervisors' instructions to BP. A deposition could clarify Meinhart's version of events. BP would be able to determine which BP employees directed Meinhart and what level of control he claims to have been exerted. It will also be able to determine how much of Meinhart's instruction came from Transocean employees. This information may allow BP to meet its burden by

---

[6] *Guillory* is a fraudulent joinder case. The Fifth Circuit has used procedures developed in the context of fraudulent joinder to evaluate fraudulent pleading of Jones Act claims. *Lackey*, 990 F.2d at 206.

determining which BP and Transocean employees directed him on the DEEPWATER HORIZON. *Cf. Hufnagel*, 182 F.3d at 346 (noting that the plaintiff's inability to identify any crew members on a vessel suggested that he lacked a substantial connection to the vessel).

Meinhart contends that allowing discovery would require him to "pre-try" his case in federal court. Doing so would "encourage[ parties] to remove cases to federal court, argue 'fraudulent pleading,' and hope to find the evidence to support their allegations later." (Docket Entry No. 32 at 4). Meinhart relies primarily on two district court cases, *Kattelman v. Otis Engineering Corp.*, 701 F. Supp. 560, 567 (E.D. La. 1988), and *Lonthier v. Northwest Insurance Co.*, 599 F. Supp. 963, 965–66 (W.D. La. 1985). In *Lonthier*, the court cautioned that if courts were to "permit extensive factual inquiry on [seaman status], defendants would be able to routinely try the question of Jones Act status in federal court by filing a petition for removal. Congress has granted the Jones Act plaintiff the right to pursue his claim in state court without removal to federal court, and absent proof of fraud in the allegations of Jones Act status, the plaintiff is entitled to litigate his claim, whatever its merit, in state court." *Lonthier*, 599 F. Supp. at 695. Both courts in those cases appear to have been concerned that defendants would abuse the availability of discovery to remove to federal court when they lacked a reasonable basis to believe that the Jones Act claim was actually improper. In *Lonthier*, the court noted that the defendants failed even to allege fraudulent pleading in their notice of removal. *Id.* The court considered the record, and determined that remand was appropriate. In *Kattelman*, the defendant conceded that it had "no independent facts" to show that the deceased employee was not a Jones Act seaman. This case is distinguishable from *Kettelman* and *Lonthier*. BP has provided facts suggesting that Meinhart has no possibility of recovery on his Jones Act

11

claim. The Sannan and Garcia affidavits establish that BP and Transocean's general approach was to leave Transocean in charge of its employees.

It should be clear at this point that this is not a case in which "preliminary scrutiny" of the motion to remand makes it clear that the case should be remanded. As to the second step, Meinhart's attorney acknowledges that the DEEPWATER HORIZON had a crew of approximately 126 people. Neither party told the court that the borrowed seaman issue was not a common issue. It seems likely that the issue will be raised in other cases. Under *Meyers*, it is appropriate to consider the stay.

The equitable factors favor a stay. As noted, if the first two factors do not favor granting the motion to remand, then a stay is generally appropriate. *Worldcom*, 244 F. Supp. 2d 903. There is little prejudice to Meinhart. Meinhart argues that if his case is transferred to the MDL court, his client faces a lengthy delay, because the transferee judge has stayed consideration of all motions, including motions to remand. But the Texas Multidistrict Litigation Panel has stayed lawsuits proceeding in the state courts. *In re Deepwater Horizon Incident Litig.*, No. 10-0376 (Tex. M.L.P. Feb. 8, 2011) (order staying litigation). As Meinhart acknowledged at the hearing, a member of the plaintiffs' steering committee represents a Jones Act plaintiff, so Meinhart's interests, including a timely resolution of the motion to remand, should be represented before the court. The delay until the JPML decides is likely to last at most a few weeks. Courts have stayed proceedings when the JPML's decision was more remote. *See La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, Civ. A. Nos. 09-235, 09-2738, at *1 (E.D. La. Apr. 2, 2009) (responsive pleadings due to MDL panel eighteen days after district court decision); *Kennedy v. Novartis Pharm. Corp.*, No. 02-2331, 2002 WL 31051601 (E.D. La. Sept. 12, 2001) (MDL panel had already ordered a conditional order of

transfer, Court anticipated a three to four week delay); *Tench v. Jackson Nat'l Life Ins. Co.*, No. 99-5182, 1999 WL 1044923, at *2 (N.D. Ill. Nov. 12, 1999) (MDL panel hearing only one week away); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal.1998) (MDL panel had already ordered a conditional order of transfer). A stay appears unlikely to prejudice Meinhart.

By contrast, if this court does not stay the litigation, BP will be forced to conduct discovery and continue to respond to the remand motion, in addition to following the orders of the MDL court and any other court with DEEPWATER HORIZON litigation pending before it. One purpose of consolidating cases under § 1407 is to coordinate discovery. *In re Vioxx Prods. Liab. Litig.*, — F. Supp. 2d —, 2010 WL 5576193, at *1 (E.D. La. Oct. 19, 2010). Transferee courts "have the ability to accommodate common and individual discovery tracks." *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377 (J.P.M.L. 2009). The transferee court is particularly well suited to determine whether and to what extent BP should be able to conduct discovery. As another court noted when deciding to stay a case arising out of the DEEPWATER HORIZON explosion last May, "[w]ith at least seventy lawsuits in different districts, the defendants face the burden of litigating in multiple jurisdictions. More importantly, between the various lawyers and judges on the cases, there is a grave potential for conflicting discovery orders." *Vath v. BP, P.L.C.*, No. 10,-1273, slip op. at 5 (E.D. La. May 24, 2010). Numerous courts have granted BP's motions to stay pending transfer since then. (*See* Docket Entry No. 4, Ex. 4 (collecting stay orders)).

It is inappropriate for this court to authorize further discovery to resolve the fraudulent pleading issue at this time.

### C. OCSLA As a Basis for Removal

Even if the Jones Act claim were fraudulently pleaded, removal requires a proper basis under 28 U.S.C. § 1441(b). Meinhart argues that OCSLA, the only basis for removal that BP cites, is not a sufficient basis for removal. The Fifth Circuit has twice observed that this question presents a "conundrum," but never decided the issue. *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 156 (5th Cir.1996); *Hufnagel*, 182 F.3d 351; *Mendez v. Anadarko Petroleum Corp.*, Civ. A. No. H-10-1755, 2010 WL 5343181, at *3 (S.D. Tex. Dec. 20, 2010). Courts have split on the issue. *Mendez*, 2010 WL 5343181, at *3.

The answer to this question is not obvious. Meinhart concedes that the issue is common to many other cases arising out of the DEEPWATER HORIZON explosion. In light of the potential for inconsistent judgments, a stay pending the JPML's decision whether to transfer is appropriate.

### III.    Conclusion

BP's motion to stay the case is granted. The case is stayed until the JPML determines whether to transfer the case to the Eastern District of Louisiana under § 1407.

SIGNED on April 4, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

14